IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTINE FEIT,**<br><br>　　　　　　*Plaintiff*,<br><br>　　　　v.<br><br>**LEHIGH UNIVERSITY,**<br><br>　　　　　　*Defendant*. | Case No. 5:19-cv-02336-JDW |

## MEMORANDUM

Some have said that "creepy" is the "worst casual insult" that one can call a man because it is somewhat indefinite but is "linked to sexual intent." Jeremy Paul Gordon, *The Worst Thing A Woman Can Call A Man*, The Hairpin (Dec. 22, 2010) (available at https://www.thehairpin.com/2010/12/the-worst-thing-a-woman-can-call-a-man/). Plaintiff Christine Feit has mustered substantial evidence that Dr. Thomas Novak was "creepy" when Ms. Feit worked at Lehigh University's Student Health and Wellness Center. Dr. Novak made inappropriate sexual comments about Ms. Feit and other female employees. He commented about Ms. Feit's décolletage, distributed sexual content to his female coworkers, and discussed female patients' weight. If half of the evidence is true, Dr. Novak had no business being in a professional setting. And, it comes as little surprise that his conduct led to a lawsuit.

Unfortunately for Ms. Feit, the Court does not have to decide whether Dr. Novak's conduct was inappropriate. It has to decide whether Ms. Feit has a basis to sue Lehigh for Dr. Novak's conduct or for Ms. Feit's termination. She does not. Her claims about Dr. Novak's conduct are too late. They also do not include enough to make out a claim that

Lehigh allowed a hostile work environment. Ms. Feit's claims about her termination fail because she has no evidence that Lehigh terminated her in retaliation for engaging in protected conduct. Instead, rightly or wrongly, Lehigh terminated her because she gave a patient the wrong dose of medicine.

## I.     FACTUAL BACKGROUND

### A.     Ms. Feit's Employment At Lehigh

Ms. Feit, a Certified Medical Assistant, worked at Lehigh's Health and Wellness Center from July 1, 2008, until May 4, 2017. She was responsible for checking patients' vital signs, assisting with minor exams or surgeries, administering allergy injections, and scheduling appointments. Adriane Stasurak, a Board-Certified Nurse Practitioner, was Ms. Feit's direct supervisor. Additionally, Ms. Feit worked closely with Dr. Novak, a physician working in the Health Center.

Ms. Feit's job performance record is mixed. She received annual performance evaluations. In 2011, Ms. Feit received two ratings of "meets most expectations," and one rating of "fully successful." (ECF No. 47-15 at 7.) In subsequent years, Lehigh evaluated Ms. Feit's performance on a scale of 1 to 5, with 1 being "unsatisfactory," 3 being "fully successful," and 5 being "exceptional." (ECF No. 48-35.) From 2012-2016, Ms. Feit received a score of "3" under the "overall assessment" category. (*Id.*)

During her employment with Lehigh, Ms. Feit was placed on probation and/or performance improvement plans on four occasions. On November 6, 2009, Ms. Feit was placed on probation for a HIPPA violation because she emailed test results to incorrect recipients. In June 7, 2010, Ms. Feit received a written warning because she did not inform Ms. Stasurak about a schedule change. Later that month, Ms. Stasurak placed Ms. Feit

on a performance improvement plan because Ms. Feit failed to communicate a patient's test results to the patient for almost a year and failed to inform the patient's physician that she was having trouble reaching the patient. On October 5, 2012, Ms. Stasurak placed Ms. Feit on a performance improvement plan and probation for treating a patient beyond her scope of practice and for failing to follow established office protocol by administering a contraceptive injection without first ensuring that a healthcare provider reviewed the patient's history. During her tenure, Ms. Feit made numerous medication errors by administering incorrect dosages of medicine. (ECF Nos. 47-22, 47-27, 47-28, 47-33, 47-37, and 47-38.)

Ms. Feit also received awards and recognitions for her work at Lehigh. In February 2010, for example, Ms. Feit received a Lehigh Tradition of Excellence Award. In February 2012, Ms. Feit received a Spot Bonus award, which recognizes "those members of [the] community whose extraordinary contributions above and beyond their normal responsibilities have had a significant impact advancing Lehigh's goals." (ECF No. 48-22.)

    **B.**    **Ms. Feit's Complaints About Dr. Novak's Harassing Conduct**

        **1.**    **2012 complaints**

In 2012, multiple employees complained about Dr. Novak's behavior. In September 2012, Ms. Feit emailed Judith Zavalydriga, Lehigh's Director of Employee Relations, to let her know that "a few of us [employees] were going to our supervisors in regards to Dr. Novak." (ECF No. 48-26 at 2.) On October 10, 2012, Ms. Feit followed up with a more detailed email. In an attached statement, she complained of various interactions with Dr. Novak, including Dr. Novak's request not to see "fat or ugly girls for

3

GYN exams," Dr. Novak's email containing an ascii emoji[1] depicting a derrière, and a comment Dr. Novak made about Ms. Feit's breast reduction. (ECF No. 47-57 at 2.)

Around that time, Katie Mutch, a nurse with the Health and Wellness Center, met with Ms. Zavalydriga to discuss "a pattern over 12 years . . . of inappropriate behavior toward several [individuals] on the part of Dr. Novak." (ECF No. 47-53 at 2.) Ms. Mutch also sent Ms. Zavalydriga a written statement describing her experience with Dr. Novak:

> Over the course of the last twelve years. . . I have been subjected to unwelcome statements, gestures and pictures by Dr. Thomas Novak. These behaviors have included sexually inappropriate comments and physical conduct that was not only demeaning to me, but to Dr. Novak's stature and reputation as a staff physician.

(ECF No. 47-55 at 2.) Among other incidents, Ms. Mutch complained of the following:

- In 2010, Dr. Novak laminated, "wrote comments in the margins," and gave Ms. Mutch an article about sex. (ECF No. 47-53 at 2.) On other occasions, Dr. Novak distributed articles to female employees where he highlighted phrases such as "Greet him [your husband] with a warm smile and show sincerity in your desire to please him." (*Id.* at 9.)

- On one occasion, Dr. Novak told Ms. Mutch that her "boobs look really good today." (ECF No. 47-53 at 2).

- On another, while Ms. Mutch was in a supply closet, Dr. Novak sequestered her while holding a "penis prop. . . in front of his fly, wiggling it, and laughing." (ECF No. 47-53 at 2.)

Following Ms. Feit's and Ms. Mutch's complaints, Ms. Zavalydriga held a meeting with Dr. Novak. During the meeting, Dr. Novak again admitted to making some of the

---

[1] Ascii is "an art form where you use simple keyboard symbols to make [a] picture." Ascii, urbandictionary.com, https://www.urbandictionary.com/define.php?term=ascii (last visited Jan. 25, 2021).

4

comments at issue and told Ms. Zavalydriga that "he didn't mean to offend." (ECF No. 47-13 at 88:3-18.) Ms. Zavalydriga then scheduled a meeting with Dr. Novak and Ms. Mutch, and a separate meeting with Dr. Novak and Ms. Feit. In each meeting, Dr. Novak apologized and committed to "behaving differently going forward." (ECF No. 47-13 at 89:12-90:6.) The parties dispute whether the meeting ended prematurely and should have been rescheduled. Ms. Feit wanted a follow-up meeting, but none was scheduled. After the meeting, Ms. Feit stopped complaining about Dr. Novak's behavior, but she asserts that the harassment continued. At some later point in time, Lehigh hired outside counsel to conduct an investigation of these incidents. During that investigation, Dr. Novak again confirmed most of the incidents that Ms. Mutch and Ms. Feit described.

    **2.    2016 complaints**

In March 2016, Ms. Feit reported another incident involving Dr. Novak. Ms. Feit told her supervisor that Dr. Novak "was yelling at [a Health Center employee] in the back office." (ECF No. 47-66.) Neither Ms. Feit nor anyone else involved in the incident suggested that the incident was an act of sexual harassment, just one of ill temper. HR held another meeting with Dr. Novak, in which he apologized.

    **C.    Ms. Feit's Termination**

In April 2017, Ms. Feit administered an allergy shot to a student based on the patient's incorrect medical chart. The chart recorded a higher injection dose than the patient's allergist had prescribed. The parties clash over who was at fault for the mistake. But, in the incident report, Ms. Feit admitted that she created an incorrect chart and that she did not complete a "chart check." (ECF No. 48-32 at 8-10.) Lehigh terminated Ms. Feit's employment on May 4, 2017. Ms. Stasurak testified that she decided to terminate

Ms. Feit's employment because Ms. Feit's repeated errors jeopardized patient safety. Lehigh's termination letter states that the University had "lost confidence in your [Ms. Feit's] ability to meet the requirements of an effective member of the Health and Wellness Center team." (ECF No. 47-46.)

### D. Kurk Harris

Ms. Feit identifies Kurk Harris as a comparator employee. Mr. Harris, a nurse, was the only man working at the Health Center other than Dr. Novak. Mr. Harris administered an incorrectly-dosed shot to the same patient as Ms. Feit, based on the incorrect information in the patient's chart. Mr. Harris was the provider for several "Quality Assurance Occurrence Reports" relating to "medication errors," but it is not clear that Mr. Harris himself erred. (ECF No. 48-33.) Lehigh did not terminate Mr. Harris for any error.

### E. Ms. Feit's Administrative Filings

On November 7, 2017, Ms. Feit filed an Employment Discrimination Questionnaire with the Pennsylvania Human Relations Commission. According to Ms. Feit, someone from the PHRC told her that her PHRC questionnaire "would be filed with EEOC . . . " (ECF No. 5-1 at Ex. C, ¶ 8.) In May 2018, the PHRC informed Ms. Feit that her PHRC questionnaire was untimely because she filed it more than 180 days after the date of the alleged incident.

On August 16, 2018, Ms. Feit filed a formal charge with the EEOC. However, internal EEOC emails from June 29, 2018, reference a file concerning Ms. Feit. It is therefore not clear from the record when the EEOC received Ms. Feit's file from the PHRC. On February 28, 2019, the EEOC issued a "Dismissal And Notice Of Rights," which indicated that the EEOC closed its file on Ms. Feit's charge because it "was not

timely filed with [the] EEOC; In other words, you waited too long after the date(s) of the alleged discrimination to file your charge." (ECF No. 47-81 at 3.)

### F. Procedural History

On May 23, 2019, Ms. Feit filed the Complaint in which she brings claims under Title VII for gender discrimination and retaliation. Lehigh filed the present motion for summary judgment, arguing that Ms. Feit failed to exhaust her administrative remedies and that her claims are time-barred. Ms. Feit filed her summary judgment opposition late without excuse, which led the Court to reprimand her. (ECF No. 53.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a

matter of law when the nonmoving party fails to make such a showing. *See Celotex*, 477 U.S. at 323.

## III. ANALYSIS

### A. Preliminary Matters

#### 1. Ms. Feit's summary judgment opposition

The Court's Policies and Procedures require parties filing for summary judgment to file a separate statement of undisputed facts in numbered paragraphs. Then, a party responding to summary judgment must "include a separate statement of material facts that responds to the movant's numbered facts and explains which facts are in dispute or why a fact is immaterial." (Policies and Procedures of Hon. Joshua D. Wolson at II.B.4.) The Court imposes these requirements to simplify summary judgment practice and to enable it to determine whether actual factual disputes exist.

Ms. Feit did not comply with this procedure. She did not respond to Lehigh's numbered paragraphs or explain which of the facts in Lehigh's statement of facts are disputed or immaterial. Instead, she included a lengthy statement of facts of her own and left it to the Court to try to determine whether Ms. Feit disputes Lehigh's facts or not. That was not what the Court requires. And, unfortunately, it was not the first time that Ms. Feit ignored the Court's directives in this case. (*See* ECF No. 53.)

Lehigh asks the Court to deem Ms. Feit to have admitted all of the facts in its statement of facts. The Court will not do so, but only because that sanction seems too severe and would prejudice Ms. Feit for the failings of her counsel. The Court will again reprimand Ms. Feit's counsel and cautions her that, in the future, she must comply with

Local Rules, Court Orders, and the Court's Policies and Procedures. If she fails to do so, the Court will strike future filings.

### 2. The scope of Ms. Feit's claims

In its brief, Lehigh challenges Ms. Feit's disparate treatment gender discrimination claim. But the Complaint neither mentions nor asserts a disparate treatment claim. In fact, the Complaint includes no language that would suggest that Ms. Feit is asserting such a claim. Ms. Feit also did not respond to Lehigh's arguments about a disparate treatment claim. The Court assumes these choices were purposeful. Therefore, the Court concludes that Ms. Feit has not asserted a disparate treatment claim. Because the claim is not in the case, the Court has no basis to enter summary judgment on it.

### B. Timeliness/Exhaustion

Before a plaintiff can file a federal suit alleging Title VII discrimination, she must exhaust administrative remedies by filing a charge of discrimination with the EEOC. *See Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)). Pennsylvania imposes a similar requirement for plaintiffs pursuing claims under the PHRA, but the PHRC is the relevant agency. *See* 43 P.S. § 959. The PHRC "and the EEOC have entered into a worksharing agreement whereby [each] designate[s] s] the other as its agent for the purpose of receiving and drafting charges and complaints." *Evans v. Gordon Food Servs.*, No. 3:14-CV-01242, 2015 WL 4566817, at *3 (M.D. Pa. July 29, 2015). As a result, in Pennsylvania, plaintiffs have 300 days from the date of the alleged unlawful employment practice to file a federal charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e–5(e) (1). In addition, "where a plaintiff timely files a complaint with one agency, either the EEOC or the PHRC,

coupled with a request for dual filing, then the complaint is deemed filed with both agencies as of that date." *Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh*, No. CIV.A. 09-1548, 2010 WL 4668469, at *5 (W.D. Pa. Nov. 9, 2010); *see also Woodson v. Scott Paper Co.*, 109 F.3d 913, 926-27 (3d Cir. 1997).

These time limitations are analogous to a statute of limitations. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002); *Mikula*, 583 F.3d at 183. When assessing timeliness, courts differentiate between discrete acts and hostile work environments. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013)."[D]iscrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Id. (quoting Morgan*, 536 U.S. at 113). But discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim under the continuing violation doctrine. *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir.2006). A hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice' " and "cannot be said to occur on any particular day." *Morgan*, 536 U.S. at 115–17. To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period. *Mandel*, 706 F.3d at 166.

To determine whether Ms. Feit's complaint is timely, the Court must first fix the date that she filed her charge with the EEOC. Lehigh argues she did not submit her charge of discrimination until she filed a formal charge with the EEOC on August 16, 2018, but Ms. Feit argues she filed with the EEOC when she submitted her PHRC questionnaire on November 7, 2017. Ms. Feit offers enough facts to create a dispute about the date of

this filing. Ms. Feit asserts by affidavit that someone from the PHRC told her that her PHRC questionnaire "would be filed with EEOC . . . " (ECF No. 5-1 at Ex. C, ¶ 8.) The EEOC's web portal reflects that she filed her charge of discrimination with the EEOC on November 7, 2017. (ECF No. 48-42.) Internal EEOC documents note that Ms. Feit filed with the EEOC on November 7, 2017, and demonstrate that the EEOC was aware of her claim before she filed her formal charge. (ECF No. 48-43.) Taking these facts in the light most favorable to Ms. Feit, the Court will, for purposes of this Motion, assume that Ms. Feit filed her charge with the EEOC on November 7, 2017. That means that she can complain about unlawful employment practices that occurred on or after January 11, 2017.

Ms. Feit's complaints about a hostile work environment do not fall within that period. Even if the Court were to assume that her 2016 complaint about Dr. Novak's bullying were relevant to a hostile work environment claim, it occurred outside of the 300-day period. In her summary judgment opposition, Ms. Feit makes no argument as to why these claims are timely, and there is none. Ms. Feit's retaliation claims are timely, though. Lehigh terminated her in May 2017, which is less than 300 days before she filed her PHRC questionnaire.

### C. Merits Of Ms. Feit's Claims

#### 1. Hostile work environment

Even if Ms. Feit's claim of sexual harassment were not time-barred, it could not get past summary judgment because Ms. Feit cannot show that Dr. Novak's conduct was severe or pervasive. To prove a hostile work environment claim, a plaintiff must show: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was

11

sufficiently severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *See Minarsky v. Susquehanna Cty.*, 895 F.3d 303, 310 (3d Cir. 2018). Conduct is severe or pervasive when it is "sufficient 'to alter the conditions of [the employee's] employment and create an abusive working environment.'" *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 214 (3d Cir. 2017) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Severity and pervasiveness are "alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017). "[I]solated incidents (unless extremely serious) will not amount to [harassment]." *Id.* (quoting another source). Rather, a court must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998).

Although Dr. Novak's behavior was offensive, Ms. Feit does not argue that any single incident was so serious as to create a hostile work environment. Rather, she argues that "the discrimination was pervasive and regular. . . ." (ECF No. 48-1 at 14-15.[2]) The Court disagrees. Dr. Novak made unwelcome and crass sexual comments. His misogyny has no place in any workplace, anywhere. But Dr. Novak's comments were not regular

---

[2] Ms. Feit inserted her Statement of Facts in the middle of her brief. The brief has page numbers that continue before and after the statement of facts. The Court uses those page numbers for reference.

12

and happened many years ago. All of the complaints concern incidents that occurred over multiple years and prior to the 2012 HR meeting. After the HR meeting, years passed without incident or complaint. And, the one complaint that Ms. Feit made in 2016 had no sexual component. It just suggested that Dr. Novak was a bully. Ms. Feit cannot establish pervasive conduct and summary judgment in favor of Lehigh is warranted.

### 2. Retaliation

The three-step burden-shifting *McDonnell Douglas* framework controls Ms. Feit's retaliation claim. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). Under this framework, the plaintiff must first establish a *prima facia* case of discrimination or retaliation. If the plaintiff carries this initial burden, the burden shifts to the defendant employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its action. If the employer articulates such a reason, the burden shifts back to the plaintiff to show that the reason was a pretext. *See id.* To do so, she must point to "some evidence, direct or circumstantial, from which a factfinder would reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

### a. *Prima facie* case

To make a *prima facie* showing of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action. *See Carvalho-Grevious*, 851 F.3d at 257. To show a causal connection, a plaintiff must prove either (1) an unusually suggestive temporal proximity

between the protected activity and the alleged discrimination or (2) the existence of a pattern of antagonism in the intervening period. *Hussein v. UPMC Mercy Hosp.*, 466 Fed. Appx. 108, 112 (3d Cir. 2012).

Ms. Feit cannot establish a *prima facie* retaliation claim for two reasons. First, her 2016 complaint about Dr. Novak was not "a protected activity" because it did not oppose an unlawful practice under Title VII. *See Barber v. CSX Dist. Servs.*, 68 F.3d 694, 701-2 (3d Cir. 1995). In 2016, Ms. Feit complained about bullying without any suggestion that the conduct was related to sex. Although Ms. Feit notes that there is no evidence that Dr. Novak bullied any male employees, there is no evidence to suggest that Dr. Novak's conduct was related in any way to anyone's sex. Bullying should not occur in a modern workplace, but Title VII does not regulate it.

Second, even if Title VII applied, Ms. Feit has not established a causal connection between her complaint in March 2016 and her termination fourteen months later, in May 2017. Fourteen months is not "unusually suggestive" and is therefore insufficient to establish the necessary causal connection. *Compare Jail v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (three-and-a-half-month period between protected activity and adverse employment decision was not unduly suggestive) *and Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three-week period between protected activity and adverse employment decision was not unduly suggestive).

Of course, "[t]he mere passage of time is not legally conclusive proof against retaliation." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007), *as amended* (Aug. 28, 2007) (quoting *Robinson v. Southeaster Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d. Cir. 1993). When temporal proximity is missing, "courts may look to the

intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee, . . . or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole. *Id.* (citing *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 280–81 (3d Cir. 2000)).

Ms. Feit alleges that it "was [Lehigh's] atmosphere itself that was one of fear, of retaliation and hostility." (ECF No. 48-1 at 20.) To support this assertion, she explains that when she first complained to HR about Dr. Novak's behavior in September of 2012, within a month, her supervisor placed Ms. Feit on a performance improvement plan. But that occurred years before the 2016 complaint, so it sheds no light on a retaliatory motive between the 2016 complaint and Ms. Feit's termination. Also, one incident of temporal overlap does not create a genuine dispute about antagonistic conduct on Lehigh's part. Although Ms. Feit asserts in her brief that Ms. Mutch was also placed on a performance improvement plan after she complained about Dr. Novak (ECF No. 48-1 at 20), she does not point to any evidence of this in the record, or even include the assertion in her statement of facts. When the Court collects the evidence and views it in the light most favorable to Ms. Feit, it still does not include enough to create an inference of antagonistic conduct.

### b. Legitimate nondiscriminatory reason

Lehigh argues that it terminated Ms. Feit because she made medical errors. That justification satisfies its burden of articulating a legitimate, nondiscriminatory reason. Ms. Feit does not argue otherwise.

15

### c. Pretext

Even if Ms. Feit could prove a *prima facie* case, she cannot prove pretext. To prove that Lehigh's termination was pretext Ms. Feit must either (1) point to evidence that the Lehigh's proffered reason is subject to such weaknesses and implausibilities sufficient to satisfy the factfinder that the Lehigh's actions could not have been for nondiscriminatory reasons; or (2) point to evidence leading a factfinder to reasonably believe that a discriminatory reason was more likely than not a motivating or determinative factor in her termination. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 645 (3d Cir. 2015) (citing *Fuentes*, 32 F.3d at 762-64).

Ms. Feit does not point to any evidence that suggests that retaliation was the real reason for Lehigh's decision. She does argue that Lehigh is making her medical "errors seem more significant" than they are (ECF No. 48-1 at 21), which the Court understands to be an argument from which a factfinder might disbelieve Lehigh's reason. The evidence does not support her argument, though.

First, Ms. Feit contends that she was not the one responsible for the dosing error that led to her termination; others were. But Ms. Feit's disagreement about who was responsible or the severity of the mistake does not matter. A "plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765. Even if Lehigh misjudged the severity of the error or laid the blame at the wrong person's feet, that does not demonstrate pretext.

Second, Ms. Feit claims that Mr. Harris made similar errors without facing discipline. To be a proper comparator, Mr. Harris must have been "similarly[ ] situated in all respects." *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018) (quote omitted). Employees are similarly situated in all respects when they held the same job or responsibilities, shared the same supervisor or had the same decision-maker involved in a decision about their employment, have comparable violation histories, and engaged in "nearly identical" conduct. *Doe v. Apria Healthcare Group, Inc.*, 97 F. Supp.3d 638, 645 (E.D. Pa. 2015) (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259-61 (5th Cir. 2009)). Mr. Harris is not a valid comparator because he held a different position from Ms. Feit, and he had a different disciplinary history than she did. His treatment has no bearing on whether Lehigh retaliated against Ms. Feit.

## IV. CONCLUSION

Ms. Feit has substantial evidence that, at times, Dr. Novak was a creep. Her claims about his conduct are untimely, though, and she does not have enough evidence to suggest that his conduct was severe or pervasive. Ms. Feit also does not have evidence demonstrating that Lehigh terminated her employment in retaliation for engaging in protected conduct. The Court will therefore grant Lehigh's summary judgment motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

February 5, 2021